632 So.2d 1124 (1994)
AMERICAN OVERSEAS MARINE CORPORATION, Wilmington Trust Corporation, and Braintree II Maritime Corporation, Appellants,
v.
Janice PATTERSON, Appellee.
No. 93-952.
District Court of Appeal of Florida, First District.
March 9, 1994.
*1125 James J. Taylor, Jr., Law Office of Gabel Taylor, Jacksonville, for appellants.
Gregory W. Johnson, Michael B. Wedner, and Lindsey C. Brock, III, Rumrell & Johnson, P.A., Jacksonville, for appellee.
WOLF, Judge.
American Overseas Marine Corporation (American), Wilmington Trust Corporation (Wilmington), and Braintree II Maritime Corporation (Braintree) appeal from a nonfinal order denying a motion to dismiss for lack of personal jurisdiction. We find that the appellants did not engage in purposeful, continuous, and systematic contacts within the state of Florida which would justify the exercise of general jurisdiction over the appellants. The trial court's order denying appellants' motion to dismiss is reversed.
On May 8, 1991, appellee filed her complaint in the lower court against appellants, seeking damages for injuries she allegedly sustained as the result of an accident that occurred in May 1988 in the harbor of Saipan, an island in the Mariannas Islands in the Pacific Ocean.[1] At the time of the accident, appellee was working as a crew member on the vessel PFC Dewayne T. Williams. Wilmington owns the PFC Dewayne T. Williams, and American Overseas operates the vessel pursuant to an operating contract with Braintree, the vessel's bareboat charterer.[2]
*1126 Appellants, all of which are nonresident corporations, were served with the original complaint by personal service on their respective registered agents for service of process in Massachusetts, where American Overseas has its principal place of business.
In response to the original complaint, appellants filed their motion to dismiss and/or to require a more definite statement, asserting, among other things, lack of jurisdiction over them in Florida. In support of their motion, appellants filed the affidavit of Jeffrey P. Sherman of American Overseas.
The Sherman affidavit asserts that the PFC Dewayne T. Williams is one of five maritime prepositioning ships, commonly referred to as "MPS vessels" that American Overseas operates pursuant to time charter agreements between Braintree and the United States.[3] These MPS vessels are prepositioned in various locations around the world, as determined by the United States Military Sealift Command, with a complement of military equipment on board sufficient to outfit a marine amphibious brigade, so as to facilitate rapid deployment of mobile United States military forces anywhere in the world that the need may arise. According to the Sherman affidavit,
[T]hese vessels do not engage in the carriage of goods, but are kept permanently loaded with jeeps, weapons and other military hardware. They are kept in almost constant movement from one port of call to another at the command of the United States military in order to maintain them and their crews in a state of maximum military readiness.
The Sherman affidavit demonstrated that appellants' contacts with Florida have been in connection with the activities of the MPS vessels, and at the direction of the United States military:
(b) At the military's direction, every two years each of the five MPS vessels [including the PFC Dewayne T. Williams] unloads her military cargo at the Jacksonville Naval Base so that the cargo can be serviced and maintained by the military. The cargo is then reloaded.
(c) Each of the "MPS" vessels participates in loading and unloading exercises at Panama City, Florida, approximately once a year, at the command of the military.
(d) The M/V "2nd Lt. John P. Bobo," one of the "MPS" vessels, is based in the Atlantic and moves between various Florida ports on a regular basis at the command of the military.
(e) The "MPS" vessels have had underwater surveys at Ft. Lauderdale, Florida.
(f) Other than the American Overseas husbanding agent specified in paragraph (g), only during periods when the aforesaid contacts with Florida take place does or did American Overseas or Braintree have any agents or employees in Florida, and these were present merely to accomplish the foregoing in accordance with the commands of the military.
(g) The husbanding agent in Florida for American Overseas' vessels is Strachan Shipping Company in Jacksonville.
According to the Sherman affidavit, with the exception of the above-mentioned military-directed activities, appellants
are neither incorporated in nor authorized to transact business in Florida; have no agents, employees, agency or offices in Florida; and do not in any manner transact, operate, conduct, engage in our carry on business or any business venture in *1127 Florida, or have any business contacts of any kind with Florida.
Subsequently, the appellee sought and the lower court by order allowed certain jurisdictional discovery for a three-and-a-half-year period preceding May 9, 1991, when the original complaint was filed. The responses to the jurisdictional discovery show that the PFC Dewayne T. Williams was in port in Florida for all or part of 25 days in 1988, or about 1/15 of the days that year. However, that vessel did not call at a Florida port in 1989, in 1990, or at any time from January 1, 1991, through May 9, 1991, the end of the time period that the court allowed for jurisdictional discovery. The PFC Dewayne T. Williams, the vessel on which plaintiff worked, thus, had no contact of any kind with Florida at any time during the two-and-a-half years prior to the commencement of this lawsuit.
The lower court also allowed jurisdictional discovery with respect to the other four MPS vessels. Appellants' jurisdictional discovery responses showed the following with respect to those vessels:
1. The First Lt. Baldomero Lopez made no port calls in Florida in 1988; was in port in Florida for all or part of 15 days in 1989; was in Florida ports for all or part of nine days in 1990; and did not enter a Florida port at any time from January 1, 1991, through May 9, 1991.
2. The First Lt. Jack Lummus was in port in Florida for all or part of seven days in 1988; was in Florida ports for all or part of nine days in 1989; and did not call at a Florida port in 1990, or at any time from January 1, 1991, through May 9, 1991.
3. The Sgt. William R. Button was in port in Florida for all or part of 20 days in 1988; and did not call at a Florida port in 1989, in 1990, or at any time from January 1, 1991, through May 9, 1991.
4. The Second Lt. John P. Bobo, unlike the other MPS vessels, is based in the Atlantic Ocean and, therefore, she has had more contacts with Florida. She was in port in Florida for all or part of 91 days in 1988; was in Florida ports for all or part of 25 days in 1989; was in Florida ports for all or part of 61 days in 1990; but she made no Florida port calls at any time from January 1, 1991, through May 9, 1991.
Following the conclusion of the jurisdictional discovery, appellants set their motion to dismiss for hearing. The trial court denied the motion to dismiss.[4]
Specific jurisdiction exists "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 411 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404, 411 n. 8 (1984). This kind of jurisdiction is often referred to as "connexity jurisdiction," since it requires a causal connection between the defendant's activities in the forum state and the plaintiff's cause of action.
Where, as here, specific jurisdiction cannot be exercised, a court in the forum state may exercise jurisdiction over a nonresident defendant only where general jurisdiction can be established. Helicopteros, supra at 411-412, 104 S.Ct. at 1870-71 (citing Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952)). General jurisdiction, as distinguished from specific jurisdiction, does not require that the plaintiff's cause of action arise out of the nonresident defendant's contacts with the forum state. Id. However, for general jurisdiction to exist, the defendant must be found to have maintained "continuous and systematic general business contacts" with the forum, so that it can properly be considered to be "present" in the forum. Id.
The requirement of continuous and systematic general business contacts establishes "a much higher threshold" than the "minimum contacts" required to assert specific *1128 jurisdiction, "for the facts required to assert this general jurisdiction must be `extensive and pervasive.'" Reliance Steel Products Co. v. Watson, ESS, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir.1982); see also Complaint of Damodar Bulk Carriers, Ltd., 903 F.2d 675, 679 (9th Cir.1990) (Helicopteros "erect[s] a stringent standard for determining which contacts will support a finding of general jurisdiction"); Provident Nat'l Bank v. California Fed. Savings and Loan Ass'n, 819 F.2d 434, 437 (3d Cir.1987) (general jurisdiction requires "significantly more than mere minimum contacts"); Allied Leather Corp. v. Altama Delta Corp., 785 F. Supp. 494, 498 (M.D.Pa. 1992) ("general jurisdiction threshold ... is much higher than that for specific jurisdiction"); Levesque v. F/V Atlantic Dawn, 1992 A.M.C. 510, 513, 1991 WL 324404 (D.Me. 1991) ("stricter standard for general jurisdiction").
In Helicopteros, supra, the Supreme Court also made clear that "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." Helicopteros, supra 466 U.S. at 417, 104 S.Ct. at 1873 (citing Kulko v. Superior Court of California, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). This is an expression of the essential constitutional requirement that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, supra at 253, 78 S.Ct. at 1239.
In 1985, after the decision in Helicopteros, the Florida Legislature amended section 48.193, Florida Statutes, to add, in current subsection (2), a provision for the exercise of general jurisdiction over nonresidents by the courts of this state. Section 48.193(2) provides that a nonresident defendant "who is engaged in substantial and not isolated activity within this state" is subject to jurisdiction in Florida "whether or not the claim rises from that activity." The Florida courts have harmonized the language of section 48.193(2) with the constitutional due process requirements enunciated in Helicopteros by holding that substantial and not isolated activity means "continuous and systematic general business contacts" as articulated in Helicopteros. Milberg Factors, Inc. v. Greenbaum, 585 So.2d 1089, 1091 (Fla. 3d DCA 1991); Spanier v. Suisse-Outremer A.G., 557 So.2d 83 (Fla. 3d DCA 1990); Ranger Nationwide, Inc. v. Cook, 519 So.2d 1087, (Fla. 3d DCA 1988), rev. denied 531 So.2d 167 (Fla. 1988).
A number of courts have addressed whether contacts of vessels owned or operated by a party with the forum state are sufficient to provide for general jurisdiction over that party. Most notably, there are three cases from the federal courts with facts that are similar to the instant case.
In Nicolaisen v. Toei Shipping Co., Ltd., 722 F. Supp. 1162 (D.N.J. 1989), the nonresident defendant, Toei Shipping Co., Ltd., was the owner of the vessel Tama Rex, which was under charter to Reefer Express Lines Propriety, Ltd. Plaintiff sued for personal injuries allegedly resulting from an incident that occurred in Panama, and had no connection with New Jersey, the forum state. Plaintiff sought to assert general jurisdiction over defendant on the basis that the Tama Rex had come into ports in New Jersey on 17 separate occasions during the four years preceding the filing of the lawsuit. In granting defendant's motion to dismiss for lack of jurisdiction, the district court stated the jurisdictional test:
Because plaintiff's claim is unrelated to Toei's forum activities, the Court can exercise personal jurisdiction over Toei only if "general jurisdiction" can be established. To establish general jurisdiction, a plaintiff must demonstrate that the defendant has maintained "continuous and substantial" forum affiliations. General jurisdiction requires greater contacts between defendant and forum than those "minimum contacts" required to establish "specific jurisdiction." Commenting on "general jurisdiction," the Third Circuit has stated, "Obviously, this is a much higher threshold to meet for the *1129 facts required to assert this general jurisdiction must be `extensive and pervasive.'"
722 F. Supp. at 1154-1165 (citations omitted).
The Nicolaisen court held that the contacts of defendant's vessel with New Jersey were "haphazard and fortuitous rather than `continuous and systematic,'" and, therefore, did not meet the test for general jurisdiction. Id. at 1165.
The court also noted that the vessel's charterer, not the defendant-owner, controlled the vessel's itinerary and determined at what ports she would call, and that this provided a second, independent basis for granting the motion to dismiss. Id. In this connection, the court stated as follows:
Toei's lack of control over where the Tama Rex would make port militates against finding that Toei was reasonably put on notice that it might be called upon to defend actions in New Jersey, especially actions that did not arise in the state. As the Supreme Court stated in the seminal case of Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state."
Id.
The court concluded that plaintiff's contention
that port calls over which Toei had no control can serve as a basis for subjecting Toei to the general jurisdiction of New Jersey courts ... would not comport with the requirements of Due Process.
Id.
In Asarco, Inc. v. Glenara, Ltd., 912 F.2d 784 (5th Cir.1990), the fifth circuit relied on Nicolaisen to reach the same conclusion in a case where the nonresident defendant's only contacts with the forum state, Louisiana, were that it operated a vessel that had called at Louisiana ports approximately 20 times during the four-and-a-half years prior to commencement of the action. The fifth circuit affirmed the granting of defendant's motion to dismiss for lack of jurisdiction on both of the grounds cited in the Nicolaisen decision:
We agree with the court in Nicolaisen v. Toei Shipping Co., Ltd., that such contacts are better characterized as sporadic than continuous and systematic. They are insufficient to cause Anglo-Eastern reasonably to anticipate the possibility of being haled into court in Louisiana. Moreover, as manager, Anglo-Eastern lacked control over where the vessels would make port. Anglo-Eastern cannot be held to have availed itself of the benefits and protection of doing business in Louisiana by virtue of its sporadic operational management of vessels sent to Louisiana by others.
912 F.2d at 787.
In Conner v. Bouchard Transp. Co., Inc., 1993 WL 388274 (E.D.Pa. September 30, 1993), the court held that a seaman injured in Boston could not sue her employer, a New York corporation, in Pennsylvania, notwithstanding the fact that the company's vessels had made at least 100 visits to terminals in Pennsylvania ports between 1988 and 1993. The court recognized that since the injury in question did not arise out of the visits to Pennsylvania ports that the inquiry was whether the court could assert general jurisdiction as a result of the defendant purposely availing itself of the privilege of conducting business with the forum state. The contacts had to be systematic and continuous. The court found that since the defendant, Bouchard, operated strictly as a charter business and had no control over where the vessels sailed, its contacts could not be considered either systematic or continuous, nor could it be said that Bouchard was purposefully availing itself of the privilege to do business in Pennsylvania.
Similarly, in Uni-Petrol Gesellschaft Fur Mineraloel Produkte, M.B.H. v. MT Lotus Maru, 607 F. Supp. 108 (S.D.N.Y. 1985), a case involving specific jurisdiction, the court nevertheless refused to invoke jurisdiction over Norsk Ilje A/S, a nonresident, based on vessel contacts with New York, the forum state, because Norsk had voyage chartered the vessel to a charter and the voyage chartered provided that the vessel could be discharged "at any port ... as ordered by charterers." 607 F. Supp. at 110. As the court observed, "Norsk should not be required *1130 to litigate in whatever forum its charterers chose to enter." Id.; see also Ginsberg v. Livestock Express, Inc., 1991 A.M.C. 565, 571 (E.D.Va. 1990) (general jurisdiction found lacking where "only contacts between [defendant] and the forum are the alleged three calls at the port of Richmond by the Charolais Express while the ship was under bareboat charter and not controlled by [defendant]").
Florida cases are consistent with these federal authorities. See Price v. Point Marine, Inc., 610 So.2d 1339, 1341-1342 (Fla. 1st DCA 1992) ("[s]poradic [vessel-related] activities or visits will not constitute `substantial and not isolated activity'"); Sanabira v. Pyburn, 557 So.2d 83 (Fla. 3d DCA 1990) ("defendants' vessel sporadic visits and other contacts with Florida did not constitute the `continuous and systematic' activity necessary to sustain a claim of personal jurisdiction under section 48.193(2)"); Ranger Nationwide, Inc. v. Cook, 519 So.2d 1087, 1089 (Fla. 3d DCA 1988), rev. denied, 531 So.2d 167 (Fla. 1988) (trucking companies' use of Florida highways as part of a nationwide trucking business "fall[s] far short of ... `continuous and systematic' activity"); Argueta v. Suzuki Motor Co., Ltd., 609 So.2d 635, 636-637 (Fla. 3d DCA 1992), rev. denied, 618 So.2d 1367 (Fla. 1993) (although defendant sold products in Florida, it could be not be held to anticipate being sued in Florida for an injury that occurred in Colombia involving a product model that it sold in Colombia but not in Florida; general jurisdiction found lacking).
Under the reasoning in Nicolaisen and Asarco, and the other above-cited authorities, appellants' contacts with Florida cannot permissibly be considered, consistent with the constitutional requirements of due process, since the MPS vessels have called at Florida ports only at the direction of the United States military, not by the choice of any of these defendants. As the Supreme Court stated in Helicopteros, this sort of "unilateral activity of ... a third person is not an appropriate consideration" in the jurisdictional analysis and does not constitute purposeful availment of the privilege of doing business in Florida so as to justify a conclusion that defendants are constitutionally "present" here.
A finding of general jurisdiction in this case would subject the defendants to the jurisdiction of the Florida courts for all legal action notwithstanding where the alleged wrongdoing or injury occurred, or whether the injury had any connection with activities undertaken in Florida.
We cannot conclude that the sporadic and nonpurposeful utilization of certain Florida ports by appellants is sufficient to allow any plaintiff, in spite of where he or she is injured, to bring a cause of action against appellants in Florida courts. Such a concept does not comply with the requirements of due process.
The case is reversed and remanded with directions that the appellants' motion to dismiss for lack of personal jurisdiction be granted.
ZEHMER, C.J., and MINER, J., concur.
NOTES
[1] Appellee alleged that she was injured when she slipped and fell as she attempted to disembark onto a dock from a launch boat, the Leatherneck, that had ferried her to shore from the PFC Dewayne T. Williams. The Leatherneck is owned and operated by Saipan Shipping Company.
[2] The appellee notes in its brief that a bareboat charter (also called a "demise charter") has been defined by Schoenbaum's, Admiralty and Maritime Law as "the transfer of full possession and control of the vessel for the period covered by the contract," as contrasted to a "time charter" which is defined by Schoenbaum as "a contract to use a vessel for a particular period of time, although the vessel owner retains possession and control." Schoenbaum, Admiralty and Maritime Law, page 382.
[3] There is a separate time charter agreement between Braintree and the United States for each of the MPS vessels. Each of the agreements provides, in article 21(f), that "[t]he Contractor [Braintree or American Overseas as its contract operator] shall operate the Vessel in such services as the Charterer [the United States] by written or telegraphic order may direct, including all matters relating to voyage and cargoes.
[4] At the hearing, appellee also argued that appellants had further contacts with Florida based on systematic hiring through union halls in Florida. This argument is not supported by any factual material relied on at the hearing. Appellee's argument that the cause of action arose in Florida as a result of maintenance and cure payments being due in Florida is unsupported by the law, and was not raised within appellee's complaint or argued at the motion to dismiss hearing.