983 So.2d 761 (2008)
ASPSOFT, INC., a Florida Corporation, Appellant,
v.
WEBCLAY, etc., et al., Appellee.
No. 5D07-2802.
District Court of Appeal of Florida, Fifth District.
June 13, 2008.
*763 Joy K. Goodyear, Windermere, for Appellant.
Amy S. Tingley and Scott A. Livingston, of Stovash, Case & Tingley, P.A., Orlando, for Appellee.
PALMER, C.J.
Aspsoft, Inc., appeals the final order entered by the trial court dismissing with prejudice its amended complaint against WebClay, Inc., and Larry Allen. Determining that the dismissal was proper as to Larry Allen, but improper as to WebClay, Inc., we affirm in part and reverse in part.
Aspsoft filed an amended complaint which alleged that Allen, on behalf of himself and WebClay, sought out and entered into an oral contract with Aspsoft, hiring Aspsoft to perform software consulting services for WebClay. The complaint asserted *764 that all of the work was performed in Florida and some payments had been made by WebClay to Aspsoft in Florida. The complaint averred that WebClay and Allen had sufficient minimum contacts with Florida because Allen, on behalf of WebClay, contacted Aspsoft and entered into an oral contract and, thereafter, engaged in continuous communications with Aspsoft in Florida. Count I alleged a claim of breach of an oral contract and count II alleged a claim of quantum meruit.
Allen and WebClay filed motions to dismiss Aspsoft's amended complaint. The motions alleged that dismissal was warranted based on lack of personal jurisdiction and the failure to allege cognizable causes of action.
Allen filed an affidavit in which he stated he was the president and registered agent for WebClay; he was a resident of North Carolina; WebClay's principal place of business was in Colfax, North Carolina; WebClay maintained no business locations in Florida; and WebClay did not conduct any business in Florida. The affidavit further stated that WebClay was involved in a business relationship with Aspsoft in connection with software consulting services and that WebClay's server, which was the subject of said services, was located in the State of Washington. The affidavit stated that Allen did not enter into any business relationship with Aspsoft as an individual, and that all services performed by Aspsoft were the result of a business relationship between Aspsoft and WebClay.
Aspsoft responded by filing an affidavit authored by Jonathan Goodyear. In his affidavit, Goodyear stated that he was the president and registered agent of Aspsoft and that the company's place of business was located in Windermere, Florida. The affidavit further stated that Aspsoft was contacted by Allen who requested that Aspsoft assist him in the development of software; the parties entered into an oral agreement to provide consulting services, including the development of software and code to WebClay; it was agreed that Aspsoft would send invoices to WebClay every two weeks for the work completed and that WebClay would pay Aspsoft as indicated on the invoices; all software and development work for WebClay was done by Aspsoft in Florida; and WebClay's Washington State server was not used to develop the software and code produced by Aspsoft for the benefit of WebClay Corporation.
Aspsoft filed a second affidavit authored by Jay Kimble. Kimble's affidavit stated that he was an employee of Aspsoft and that all software and development work for WebClay was done in Florida. He further stated that Allen had contacted him numerous times to discuss the status of the project.
The matter proceeded to a hearing before the General Magistrate. Upon review, the General Magistrate issued a report which recommended that the trial court dismiss Aspsoft's amended complaint with prejudice based on both lack of personal jurisdiction over the defendants and failure to allege valid causes of action. The trial court ratified the report and dismissed Aspsoft's amended complaint.
Aspsoft first argues that the trial court reversibly erred in ratifying the General Magistrate's ruling that dismissal of its amended complaint was warranted based on lack of personal jurisdiction over the defendants. As to WebClay only, we agree.[1]
*765 The standard of review is de novo whenever an appeal arises from the trial court's decision on a motion to dismiss for lack of jurisdiction. American Exp. Ins. Services Europe Ltd. v. Duvall, 972 So.2d 1035, 1038 (Fla. 3d DCA 2008).
Under the two-part jurisdictional analysis detailed by the Florida Supreme Court in Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989), in order to determine whether personal jurisdiction over a non-resident defendant in Florida is proper, the trial court must examine the specific factual allegations set forth in a complaint to determine: (1) whether the facts set forth one or more of the predicate acts enumerated in section 48.193 of the Florida Statutes; and, if so, then (2) whether the facts set forth the defendant's minimum contacts with Florida necessary to satisfy federal constitutional due process requirements. Cohn v. Woolin, 971 So.2d 868 (Fla. 3d DCA 2007). Section 48.193 of the Florida Statutes sets forth several actions which subject a non-resident defendant to the jurisdiction of the Florida courts. When analyzing the second prong of the Venetian Salami analysis, our court has explained:
A Florida court obtains specific personal jurisdiction over a nonresident if the nonresident maintains "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" Execu-Tech [Business Systems, Inc. v. New Oji Paper Co. Ltd.], 752 So.2d [582] at 584 [(Fla.2000)] (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); see also [Glovegold Shipping, Ltd. v. Sveriges Angfartygs Assurans Forening, 791 So.2d 4 (Fla. 1st DCA 2000)]. Adequate minimum contacts are established if the court finds that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Glovegold Shipping, 791 So.2d at 11 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The defendants must have purposefully availed themselves of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the laws of that state.
Northwestern Aircraft Capital Corp. v. Stewart, 842 So.2d 190, 195-196 (Fla. 5th DCA 2003).
*766 Here, as for the first prong of the Venetian Salami analysis, Aspsoft alleged that jurisdiction was proper pursuant to sections 48.193(1)(a) & (g) of the Florida Statutes, which reads, in relevant part:
48.193. Acts subjecting person to jurisdiction of courts of state
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
* * *
(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
§ 48.193(1)(a) & (g), Fla. Stat. (2007).
The General Magistrate was correct in concluding that the undisputed facts set forth in the parties' affidavits were sufficient to demonstrate that Allen's personal conduct vis a vis Aspsoft did not subject him to the jurisdiction of the Florida courts. Allen's affidavit expressly stated that he never personally engaged in any business relationship with Aspsoft and neither of the affidavits submitted by Aspsoft make any mention of any acts undertaken by Allen personally.
In contrast, as for Aspsoft's claims against WebClay, the facts set forth in Aspsoft's amended complaint and affidavits are sufficient to support the conclusion that personal jurisdiction over WebClay by the Florida courts is proper pursuant to Florida's long-arm statute since the affidavits state that WebClay breached the parties' oral contract by failing to make payments which were due to be made in Florida. It is sufficient for purposes of satisfying the first prong of the Venetian Salami analysis that a complaint allege that a contract was made by a resident plaintiff with a non-resident defendant and that payment was agreed to have been made in Florida. See Magic Pan Int'l, Inc. v. Colonial Promenade, 605 So.2d 563 (Fla. 5th DCA 1992)(holding that the breach of a contractual obligation to make payment in Florida facially provided jurisdiction under Florida's long-arm statute).
The next step in the analysis of whether personal jurisdiction exists over WebClay is the determination of whether the facts set forth in Aspsoft's amended complaint and affidavits are sufficient to satisfy the constitutional "minimum contacts" test. In analyzing whether a non-resident defendant has the requisite minimum contacts with Florida to justify personal jurisdiction
courts should determine whether the nonresident's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In order for a nonresident defendant to anticipate being haled into a Florida court, it is essential that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within Florida, thus invoking the benefits and protections of its laws. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).
Arch Aluminum & Glass Co., Inc. v. Haney, 964 So.2d 228, 233 (Fla. 4th DCA *767 2007). See also Extendicare, Inc. v. Estate of McGillen, 957 So.2d 58, 63 (Fla. 5th DCA 2007).
Here, the jurisdictional facts set forth in Aspsoft's amended complaint and affidavits were essentially that WebClay entered into an oral agreement with Aspsoft for computer consulting services, WebClay breached the parties' oral contract by failing to make payments which were due in Florida, and that WebClay employees communicated telephonically with Aspsoft's employees in Florida for the purpose of receiving consulting services. Such facts are sufficient to satisfy the minimum contacts test.
In Venetian Salami, the Court emphasized that each case must be analyzed on its own facts; however, in citing to the facts presented in that case, the Court did state that the following facts "appeared" to satisfy the minimum contacts test:
In his affidavit, Parthenais stated that he had been contacted by Venetian at his place of business in Gainesville, Florida, and requested to investigate a large receivable owed to Venetian. He said that he and Venetian made an oral agreement that he would investigate the collectibility of the receivable in Florida, New York, and Canada and such other locations as might be required. It was agreed that Venetian would pay him at his business location in Alachua County, Florida. He further stated that he had performed services and incurred expenses in Florida, Canada, and New York. Parthenais also filed a supporting affidavit of Pierre Patenaude who was president of Venetian when the transaction in question took place. Patenaude said that in March of 1987 Venetian contacted Parthenais at his place of business in Alachua County and engaged his services to advise Venetian with respect to a large delinquent account due the company. He said that it was agreed that Parthenais would submit his statement and that Venetian would send its payment to Parthenais' place of business in Alachua County.
Id. at 499-503. See also American Financial Trading Corp. v. Bauer, 828 So.2d 1071, 1072-1075 (Fla. 4th DCA 2002)(holding that non-resident defendant was subject to personal jurisdiction in Florida because the facts established that defendant purposely availed himself of the privilege of carrying on business activities in Florida by hiring a broker in Florida and initiating more than 120 commodities transactions through a Florida broker; defendant engaged the services of the plaintiff for the purpose of buying and selling commodities for pecuniary benefit and his business activity was substantial and not isolated, engaging in over 120 transactions involving more than $465,000); Ben M. Hogan Co., Inc. v. QDA Inv. Corp., 570 So.2d 1349, 1350-1351 (Fla. 3d DCA 1990)(holding that non-resident defendant had sufficient minimum contacts with Florida due to fact that defendant reached out to a Florida corporation for assistance in refinancing or selling its two-million-dollar note; once the business relationship was established between the parties the defendant maintained a watchful eye over plaintiff's activities repeatedly contacting plaintiff's offices in Florida in connection with the performance of the contractual duties).
We next review the issue of whether the trial court reversibly erred by ratifying the General Magistrate's recommendation to dismiss count I of Aspsoft's amended complaint with prejudice for the failure to state a cognizable cause of action. In recommending dismissal of count I, the General Magistrate stated:
Count I of Plaintiff's Amended Complaint is dismissed pursuant to Rule 1.140(b) of the Florida Rules of Civil *768 Procedure for failure to state a cause of action upon which relief might be granted under applicable Florida authority. Specifically, Count I of Plaintiff's Amended Complaint impermissibly commingles separate and distinct claims against multiple defendants. . . . Furthermore, Count I of Plaintiff's Amended Complaint fails to plead sufficient ultimate facts to establish the existence of an oral agreement. Finally, Count I of Plaintiff's Amended Complaint is barred by Florida's Statute of Frauds.
Aspsoft concedes that count I impermissibly commingled separate and distinct claims against the separate defendants, but argues that the proper remedy would have been to grant the dismissal motion without prejudice to Aspsoft filing a second amended complaint. We agree.
In its report and recommendation, the General Magistrate ruled:
[T]his Court finds that the defects within Plaintiff's Amended Complaint as addressed herein cannot be cured through further amendment, and, therefore the Amended complaint must be dismissed with prejudice.
However, in Gladstone v. Smith, 729 So.2d 1002, 1003 (Fla. 4th DCA 1999), the Fourth District explained:
A claim should not be dismissed with prejudice "without giving the plaintiff an opportunity to amend the defective pleading, unless it is apparent that the pleading cannot be amended to state a cause of action." Kairalla v. John D. and Catherine T. MacArthur Found., 534 So.2d 774, 775 (Fla. 4th DCA 1988). The opportunity to amend a complaint should be liberally given. See Gamma Dev. Corp. v. Steinberg, 621 So.2d 718 (Fla. 4th DCA 1993); Dryden Waterproofing, Inc. v. Bogard, 488 So.2d 672, 673 (Fla. 4th DCA 1986)("[L]eave to amend a complaint should be freely granted when justice so requires and it should not be denied unless the privilege has been abused."). However, "as an action progresses, the privilege of amendment progressively decreases to the point that the trial judge does not abuse his discretion in dismissing with prejudice." Kohn v. City of Miami Beach, 611 So.2d 538, 539 (Fla. 3d DCA 1992) (citation omitted).
The defects in the claims set forth in count I could potentially be cured by future amendments. Accordingly, the dismissal of the breach of contract claim against WebClay for impermissibly commingling separate and distinct claims should have been without prejudice.
The General Magistrate also erred in concluding that Aspsoft's complaint was subject to dismissal with prejudice for failure to sufficiently allege a valid cause of action for breach of an oral contract since the amended complaint set forth sufficient facts relating to the date the contract was executed, the nature of the work required to be performed pursuant to the contract, and the contract's payment terms. See Carole Korn Interiors, Inc. v. Goudie, 573 So.2d 923 (Fla. 3d DCA 1990)(holding that company which provided interior design services sufficiently alleged cause of action for breach of oral contract, where company alleged it had entered into oral contract with defendants for interior design services, that company had provided agreed services, that defendants breached contract by refusing to remit payment, and that company suffered damages).
The General Magistrate further erred in concluding that Aspsoft's breach of contract claim was barred by Florida's Statute of Frauds.
*769 Section 725.01 of the Florida Statutes (2007) sets forth Florida's Statute of Frauds as follows:
725.01. Promise to pay another's debt, etc.
No action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.
Here, neither the amended complaint nor any of the affidavits demonstrate an intent on the part of the parties that the computer consulting work would not have been completed within one year of the date of the contract. As such, the General Magistrate erred in recommending dismissal of count I based on a violation of Florida's Statute of Frauds. See Hesston Corp. v. Roche, 599 So.2d 148, 148 (Fla. 5th DCA 1992)(explaining that only if a contract could not possibly be performed within one year would it fall within the statute).
The final issue for our review is whether the trial court erred in dismissing Aspsoft's claim for quantum meruit in count II. The General Magistrate recommended dismissal, reasoning as follows:
Count II of Plaintiff's Amended Complaint is likewise dismissed pursuant to Rule 1.140(b) of the Florida Rules of Civil Procedure for failure to state a cause of action upon which relief might be granted under applicable Florida authority. Specifically, Count II of Plaintiff's Amended Complaint is barred by the operation of Florida's economic loss doctrine.
Aspsoft challenges this ruling, arguing that the General Magistrate erred in dismissing count II based on the application of Florida's economic loss rule because the quantum meruit claim was simply an alternative theory to its breach of contract claim. We agree. See generally Mills v. Joiner, 20 Fla. 479 (Fla.1884); LynkUs Communications, Inc. v. WebMD Corp., 965 So.2d 1161 (Fla. 2d DCA 2007).
Accordingly, we affirm the trial court's dismissal of all claims relating to Larry Allen, but we reverse the dismissal of the claims against WebClay and remand for further proceedings consistent with this opinion.
AFFIRMED in part; REVERSED in part; REMANDED.
SAWAYA and COHEN, JJ., concur.
NOTES
[1] Allen and WebClay argue that the claims of error raised by Aspsoft in this appeal were waived for purposes of appellate review due to Aspsoft's failure to file exceptions to the General Magistrate's report and recommendation as authorized by rule 1.490 of the Florida Rules of Civil Procedure. The rule reads:

Rule 1.490. Magistrates
(a) General Magistrates. Judges of the circuit court may appoint as many general magistrates from among the members of the Bar in the circuit as the judges find necessary, and the general magistrates shall continue in office until removed by the court. The order making an appointment shall be recorded. Every person appointed as a general magistrate shall take the oath required of officers by the Constitution and the oath shall be recorded before the magistrate discharges any duties of that office.
* * * * * * 3
(h) Filing Report; Notice; Exceptions. The magistrate shall file the report and serve copies on the parties. The parties may serve exceptions to the report within 10 days from the time it is served on them. If no exceptions are filed within that period, the court shall take appropriate action on the report. If exceptions are filed, they shall be heard on reasonable notice by either party.
However, Allen and WebClay have failed to cite to any statutory or case law to support their waiver argument, and independent research has failed to uncover any legal support for the waiver argument.