ASARCO, INC. and Hansa Marine
Insurance Co., etc., et al.,
Plaintiffs–Appellants,

v.

GLENARA, LTD. and Anglo–Eastern
Management Services, Ltd.,
Defendants–Appellees.

No. 89–3620.

United States Court of Appeals,
Fifth Circuit.

Sept. 14, 1990.

Robert B. Acomb, Jr., Robert T. Lemon, II, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for plaintiffs-appellants.

Mary Campbell Hubbard, Antonio J. Rodriguez, Paul A.C. Jaffe, Scott Kaiser, New Orleans, La., for defendants-appellees.

Before GEE, POLITZ, and BARKSDALE, Circuit Judges.

POLITZ, Circuit Judge:

ASARCO, Inc. and Hansa Marine Insurance Company appeal the dismissal of their suit without prejudice. Finding that the district court lacked personal jurisdiction over the defendants, we affirm.

### Background

The M/V CUMBERLANDE sank near Pitcairn Island in the Pacific Ocean en route from Newcastle, New South Wales, Australia to Burnside, Louisiana. Amongst the lost cargo was 10,278 metric tons of elura lead concentrates, carried under a bill of lading held by and endorsed to ASARCO, a New York corporation, and insured by Hansa Marine Insurance, a Swedish corporation. The vessel was owned by Glenara, Ltd., a Hong Kong corporation. At the time of the CUMBERLANDE's last voyage Glenara had time-chartered the vessel to Furness–Withy, an Australian corporation, which had voyage-chartered to Electrolytic Zinc Company of Australasia, Ltd., another Australian corporation. Anglo–Eastern Management Services Limited, a Hong Kong corporation with its registered office at the same location as Glenara's, managed the CUMBERLANDE on its last trip. The bill of lading was signed by Burns, Philp & Company, Ltd. as agent for either Furness–Withy or Electrolytic Zinc.

Seeking to recover damages for the lost cargo, ASARCO and Hansa Marine sued Glenara and Anglo–Eastern in both federal court and Louisiana state court, asserting claims in both actions under the Carriage of Goods by Sea Act, 46 U.S.C. App. §§ 1300 et seq., the Pomerene Bills of Lading Act, 49 U.S.C. App. §§ 81 et seq., and state tort and contract law. Glenara and Anglo–Eastern removed the state court suit to federal court, where it was consolidated with the federal action. Defendants then moved to dismiss on grounds of lack of personal jurisdiction, improper venue and forum non conveniens, while plaintiffs sought remand of the state suit. The district court refused to remand, finding no personal jurisdiction. Plaintiffs sought reconsideration of both rulings, partly on the basis of newly discovered information concerning Anglo–Eastern's contacts with Louisiana, and they also sought the reopening of discovery. Following a hearing the court refused to remand or to reopen discovery and reaffirmed its prior ruling, dismissing the consolidated cases without prejudice for lack of personal jurisdiction, improper venue and forum non conveniens. ASARCO and Hansa Marine timely appealed.

In this court, Glenara and Anglo–Eastern successfully moved to supplement the record with summonses of Glenara in suits filed by ASARCO and Hansa Marine in Hong Kong and Australia. Plaintiffs represented to this court that they filed these foreign actions as protective measures, pending the outcome of the United States litigation. Carried with the case were two motions by Glenara and Anglo–Eastern to strike arguments by ASARCO and Hansa Marine.

### Analysis

To meet a challenge to *in personam* jurisdiction prior to trial, "plaintiff need only make a *prima facie* showing of jurisdiction, so that the allegations of the complaint are taken as true except as controverted by the defendant's affidavits and conflicts in the affidavits are resolved in plaintiff's favor." *Travelers Indemnity Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir.1986), *modified on other grounds*, 836 F.2d 850 (1988). In light of uncontroverted assertions in defendants' affidavits, we find that plaintiffs failed to

make such a showing and thus agree with the district court that it lacked personal jurisdiction over Glenara and Anglo–Eastern.

■ Personal jurisdiction over a nonresident defendant attaches only when a defendant is amenable to service of process under the forum state's long-arm statute and the exercise of jurisdiction comports with the due process clause of the fourteenth amendment. In the instant case, these two inquiries merge into one because Louisiana's long-arm statute permits service of process coterminous with the scope of the due process clause. La.R.S. 13:3201; *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359 (5th Cir.1990).

■ The due process inquiry likewise has two parts. For personal jurisdiction to exist the nonresident defendant purposefully must have established "minimum contacts" with the forum state such that he invoked the benefits and protections of the forum's laws and thus reasonably could anticipate being haled into court there. In addition, circumstances must be such that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Gulf Consolidated Services v. Corinth Pipeworks, S.A.*, 898 F.2d 1071 (5th Cir.1990).

"Minimum contacts" can arise in two ways:

> When a cause of action arises out of a defendant's purposeful contacts with the forum, minimum contacts are found to exist and the court may exercise its "specific" jurisdiction. Even a single, substantial act directed toward the forum can support specific jurisdiction. Where a cause of action does not arise out of a foreign defendant's purposeful contacts with the forum, however, due process requires that the defendant have engaged in "continuous and systematic contacts" in the forum to support the exercise of "general" jurisdiction over that defendant.... [C]ontacts of a more extensive quality and nature are required.

*Dalton*, 897 F.2d at 1361–62 (citations omitted); *see also Burger King; Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). We find minimum contacts of neither type present in the case at bar.

■ Plaintiffs argue that specific jurisdiction exists because Glenara and Anglo–Eastern contracted to deliver cargo in Louisiana and their failure to do so, occasioned by the sinking of the CUMBERLANDE, gave rise to this cause of action. The argument fails in the face of uncontroverted evidence negating the existence of any such contract. At the time of its last voyage the CUMBERLANDE was under the control of its charterers, not Glenara. Although Anglo–Eastern managed the vessel, the CUMBERLANDE sailed only on orders from its charterers; Anglo–Eastern in its capacity as manager did not control the destination. Because neither Glenara nor Anglo–Eastern directed the CUMBERLANDE to Louisiana, the fact that the vessel set sail for a Louisiana port does not imply an agreement by either defendant to deliver cargo there.

Plaintiffs instead rely on printed matter in the standardized bill of lading stating that the party-signatory signed as "Master or Agent of said Vessel." Such language, standing alone, is insufficient to confer *in personam* jurisdiction over either Glenara as ship owner or Anglo–Eastern as employer of the CUMBERLANDE's master. Neither defendant authorized Burns, Philp, the entity which signed as agent, to sign on its behalf; apparently the signature was on behalf of one of the charterers. Absent evidence that the master had bestowed actual or apparent authority on Burns, Philp to sign for him, Burns, Philp's unilateral act of signing does not bind the master. *Cactus Pipe & Supply v. M/V MONTARTRE*, 756 F.2d 1103 (5th Cir.1985); *Lana Mora, Inc. v. S.S. WOERMANN ULANGA*, 672 F.Supp. 125 (S.D.N.Y.1987). Although signature as agent of the vessel may confer *in rem* jurisdiction over the

vessel once it sets sail with the cargo, it does not confer *in personam* jurisdiction over the owner. *Cactus Pipe;* 2A Benedict on Admiralty, *Bills of Lading* § 35 at 4–19 (7th ed. 1990). Thus, neither Glenara nor Anglo–Eastern purposefully directed the cargo to Louisiana. Specific jurisdiction does not lie.

■ Alternatively, plaintiffs maintain that Anglo–Eastern had sufficient contacts with Louisiana to support general jurisdiction. We are not persuaded. Anglo–Eastern was not licensed to do business in Louisiana; did not solicit business there; did not maintain an office there; and did not own property or employ personnel in the state. The sole contacts cited by plaintiffs were 47 calls at Louisiana ports for the period 1985 through early 1989 by ships managed at one time or another by Anglo–Eastern. Defendants countered with evidence that only 20 of these calls were made during periods when Anglo–Eastern managed the involved vessel.[1] Of these, two occurred in 1985, nine in 1986, two in 1987, four in 1988, and three in 1989. We agree with the court in *Nicolaisen v. Toei Shipping Co., Ltd.*, 722 F.Supp. 1162 (D.N. J.), *aff'd without opinion*, 887 F.2d 262 (3d Cir.1989), *motion for leave to proceed in forma pauperis denied*, —— U.S. ——, 110 S.Ct. 2166, 109 L.Ed.2d 495 (1990), that such contacts are better characterized as sporadic than continuous and systematic. They are insufficient to cause Anglo–Eastern reasonably to anticipate the possibility of being haled into court in Louisiana. Moreover, as manager, Anglo–Eastern lacked control over where the vessels would make port. Anglo–Eastern cannot be held to have availed itself of the benefits and protections of doing business in Louisiana by virtue of its sporadic operational management of vessels sent to Louisiana by others.

Our conclusion that personal jurisdiction is lacking makes it unnecessary for us to consider the assignments of error on venue and *forum non conveniens*. We briefly address, however, the argument that the state court action was improperly removed and should have been remanded.

■ Subject matter jurisdiction of the action filed in state court, which asserted claims identical to those in the federal suit, is based on 28 U.S.C. § 1337 by virtue of the COGSA claim. *Crispin Co. v. Lykes Bros. Steamship Co.*, 134 F.Supp. 704 (S.D. Tex.1955). Plaintiffs contend that the state action should have been remanded because defendants cited erroneous grounds for removal in their removal petition. We need not decide that issue. Were the state action remanded, the Louisiana courts would be bound by our ruling that defendants had insufficient contacts with Louisiana to satisfy the federal due process clause requisites for personal jurisdiction. A remand thus would be a futile gesture, wasteful of scarce judicial resources, an exercise in which we decline to engage.[2]

Finally, we find no abuse of discretion in the district court's denial of plaintiffs' motion to reopen discovery on jurisdictional issues. Plaintiffs' late-discovered information does not support their contention that defendants incorrectly responded to prior discovery requests as such were framed.[3]

The judgment is AFFIRMED.

---

**1.** Plaintiffs did not controvert defendants' evidence concerning which of the 47 calls were made under Anglo–Eastern management but did cite two additional calls, one occurring after the filing of this complaint. Defendants' 20–call count likewise includes three calls made after the filing of the complaint. Because the relevant time for determining jurisdiction is the filing of the complaint, defendants' 20–call figure is slightly high.

**2.** The result would be the same even if the district court had remanded the state action *prior* to deciding the personal jurisdiction issue,

as plaintiffs contend it should have. A finding of lack of personal jurisdiction on constitutional grounds in the identical federal suit would have bound the state court and precluded further litigation. Thus, plaintiffs' argument as to the order in which the remand and personal jurisdiction issues were decided is specious, given the need to decide personal jurisdiction in the action filed in federal court and the existence of subject matter jurisdiction over the removed action.

**3.** We do not consider defendants' motion to strike.