**Rusty and Emily HOLMES**

v.

**TV–3, INC., d/b/a WLBT Channel 3 Television; Marsha Pollock; and Larry James Lyons.**

**Civ. A. No. 90–1926–S.**

United States District Court,
W.D. Louisiana,
Shreveport Division.

April 12, 1991.

John Charles Milkovich, Shreveport, La., for plaintiffs.

Billy R. Pesnell, Philip E. Downer, III, Hargrove, Guyton, Ramey & Barlow, Shreveport, La., Alex A. Alston, Jr., Terryl K. Rushing, Thomas, Price, Alston, Jones & Davis, Jackson, Miss., for defendants.

Larry James Lyons, pro se.

## MEMORANDUM RULING

PAYNE, United States Magistrate Judge.

Currently before the Court is the defendants' Motion to Dismiss for Lack of Personal Jurisdiction. Since this motion is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor is it dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof and in accordance with the standing order of Judge Stagg. Any appeal must be taken to the District Judge in accordance with Rule 72(a) and U.L.L.R. 19.09(a).

When, as here, a non-resident defendant protests exercise of personal jurisdiction, the burden falls on plaintiff to make a *prima facie* showing that personal jurisdiction exists. In a federal diversity case, the federal court must apply the law of the state in which it sits. *Rittenhouse v. Mabry*, 832 F.2d 1380, 1382 (5th Cir. 1987). Since the Louisiana long-arm statute, La.R.S. 13:3201, extends as far as is permitted by due process, the sole inquiry for this Court becomes whether the exer-

cise of personal jurisdiction over a non-resident defendant comports with federal constitutional requirements. See *Petroleum Helicopters, Inc. v. Avco Corp.*, 513 So.2d 1188 (La.1987). Once the non-resident files the motion to dismiss, the party who seeks to invoke the jurisdiction of the Court bears the burden of establishing contacts by the non-resident sufficient to invoke the jurisdiction of the court. To meet the challenge prior to trial, plaintiff must make a *prima facie* showing of jurisdiction. In doing so, the uncontroverted allegations of the complaint must be taken as true, and any conflicts between the facts contained in the affidavits of the parties must be resolved in the plaintiff's favor. *D.J. Investments v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir.1985). When examining Rule 12(b) motions, the court has discretion to consider many types of evidence, even hearsay, if it feels that it is substantive and comprehensive enough to facilitate disposition of the action. See *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985); 5A Wright & Miller *Federal Practice and Procedure: Civil 2d* § 1364, pp. 475–481.

*The Complaint*

The uncontroverted allegations of the complaint can be summarized as follows: Both plaintiffs are residents of Caddo Parish. The defendants are TV–3, Inc., a Mississippi corporation located in Jackson, Mississippi; and Marsha Pollock and Larry Lyons, both Mississippi residents. Plaintiff Emily Holmes was previously married to defendant Lyons. Five children were born of the marriage and the couple was eventually divorced. They have since engaged in protracted litigation concerning the custody and care of the children. During the course of the litigation, the children have moved back and forth between Shreveport and Jackson, Mississippi.

The instant litigation arises out of the broadcast of a documentary news feature entitled "Suffer the Little Children", which aired on TV–3. Defendant Pollock, a reporter for TV–3, is said to have participated in the writing, production, narration and broadcast of the story, as well as having appeared in it. Defendant Lyons provided a videotaped interview to Pollock, which was incorporated into the documentary. The story accused the plaintiffs of participating in satanic and occult rituals, the physical, sexual, and emotional abuse of the children and other such actions. Plaintiffs claim that the story is false, defamatory and highly damaging. The only allegation in the complaint concerning contacts with Louisiana are that the documentary was televised throughout eastern Louisiana, including the Parishes of Madison, Richland, and Franklin. There are no allegations that Pollock has ever set foot in the State of Louisiana, although she is said to have appeared in the broadcast. The only mention of contact with Louisiana by defendant Lyons is the allegation that he has taken his children to New Orleans to visit practitioners of voodoo, black magic and the occult.

*Plaintiffs' Exhibits*

In addition to the allegations of the complaint, the plaintiffs have submitted affidavits and exhibits in response to the motions to dismiss. Stan Jones testifies in his affidavit that he is the Director of Operations for Cable Management Associates of Monroe, Louisiana. His company is affiliated with the Tallulah cable television system and he is familiar with and oversees its operations. He states that the Tallulah cable system distributes programming to 2,228 Louisiana subscribers. Among the channels these subscribers receive as part of their basic programming is defendant, Channel 3. At the time of the broadcast in question, there were at least 2,032 Tallulah cable subscribers. The affidavit of Debbie Hill, a Tallulah cable employee, also shows that Channel 3 was being broadcast over their system. The affidavits of Kirk Morley and Carolyn Tamburo state that they are residents of Tallulah and that throughout 1989 and 1990 they received clearly visible and audible transmission of television newscasts and other programming transmitted by Channel 3. These broadcasts were received in their home without the benefit of a satellite disk.

The two plaintiffs have also submitted affidavits. They testify that while living in Vicksburg, Mississippi, they regularly watched Channel 3. They remember it running news features concerning eastern Louisiana, particularly events occurring in Tallulah and Delhi, Louisiana. They both specifically recalled reports concerning a winter ice storm in 1985. They both also recalled seeing advertisements for Woodlawn Hills, a chemical dependency unit based in West Monroe, Louisiana. Also a part of the record are pages from the Madison Journal, published in Madison Parish, Louisiana. The Journal's television section contains a listing for TV–3.

*Defendants' Exhibits*

The defendants have also submitted affidavits and exhibits. Dennis Smith testified that he is the News Director of TV–3. He says that it is not qualified to do business in Louisiana and it does not have a resident agent for service of process there. Neither does it have offices in Louisiana, nor does it own any real or personal property in the state. TV–3 does no banking and executes no contracts in Louisiana. It does not pay taxes, purchase supplies, maintain books or records, keep a telephone listing, or have an address in Louisiana. He further testified that TV–3 does not routinely report on Louisiana news, except stories that would be of regional or national interest. He also testifies that TV–3 does not solicit advertising from Louisiana residences or businesses, but this is contradicted by plaintiff's affidavit, which must be accepted as true for purposes of this motion. See *Asarco Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir.1990). He admits that the station signal can be received in Louisiana but claims that only residents of a small portion of three eastern parishes receive the station's grade A signal. The remaining recipients get only the grade B signal, which is of marginal quality.

Exhibit B to the motion shows a chart used by the station which shows that the grade A signal does reach substantial portions of East Carroll, Madison and Tensas Parishes. The grade B signal, while described as inferior, still manages to reach all or part of 10 Louisiana Parishes. However, the defendants have since admitted to an apparently deceptive advertising practice by backing away from their own marketing map in favor of an FCC map attached to their reply brief. The FCC map shows coverage extending to a much smaller portion of both Louisiana and Mississippi than is shown by the map TV–3 presents to potential advertisers.

An Arbitron report shows that while there are several viewers of the station in Louisiana, they make up only 8.2% of the total audience. The affidavit of Dan Modisette, Station Manager, states that the station has no connection with the cable company in Tallulah and receives no financial benefit from their transmission of the signal. He also states that he has had personnel review advertising records and has been unable to locate any record of advertising on the station by Woodlawn Hills. The affidavit of Larry Lyons is also submitted wherein he alleges his Mississippi residence and denies the charges of the complaint.

In regard to the difference between a grade A and a grade B signal, plaintiffs submit an additional affidavit from Stan Jones who, having several years of experience and education in the field, testifies that a grade B signal transmits a clearly visible and audible television signal to approximately 85% of the homes located within its range.

## ANALYSIS

As noted in *Asarco, supra,* the due process inquiry has two parts. The nonresident defendant must purposefully establish minimum contacts with the forum state such that he has invoked the benefits and protections of the state's laws and thus reasonably could anticipate being haled into court there. In addition, the exercise of jurisdiction must not offend traditional notions of fair play and substantial justice. See *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ Minimum contacts with the forum state may arise incident to a federal court's "general" or "specific" jurisdiction over a nonresident defendant. General jurisdiction is invoked where the nonresident defendant maintains continuous and systematic contacts with the forum state. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir.1990). When a cause of action arises out of a defendant's purposeful contacts with the state, the Court may exercise its specific jurisdiction. "Even a single, substantial act directed toward the forum can support specific jurisdiction." *Dalton v. R & W Marine Inc.*, 897 F.2d 1359 (5th Cir. 1990).

### Defendant TV–3

■ As to defendant TV–3, the Court is especially persuaded by the map of their broadcast area attached to their motion. A very large portion of the grade B area, as well as a significant segment of the grade A area, is in Louisiana. This map, with the words "Covers Your Market!", is apparently for use in persuading potential advertisers and is meant to represent the market these advertisers can reach. This deliberate reliance upon the signal reaching Louisiana is a significant contact with the State. Bearing in mind that the Court must accept plaintiffs' affidavits as true, there is evidence of news stories concerning Louisiana and advertisements from Louisiana businesses being aired over the station.

While the Court declines to address whether general jurisdiction could be exercised over TV–3, it finds that because the alleged tortious activity arose directly from the contacts with the state, specific jurisdiction is available.[1] In reaching this decision, the Court is instructed by *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779–780, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984). It found that the defendant's "activities in the forum may not be so substantial as to support jurisdiction over a cause of action unrelated to those activities". However, the defendant was "carrying on a 'part of its general business' in [the forum state], and that is sufficient to support jurisdiction when the cause of action arises out of the very activity being conducted, in part, in [the forum state]".

The parties should bear in mind that special presumptions and burdens of proof apply to this motion. At trial, plaintiff will be faced with a burden of proving jurisdiction by a preponderance of the evidence. At this time, the Court only holds that a *prima facie* showing has been made, accepting plaintiff's evidence as correct.

### Defendant Pollock

■ As to defendant Pollock, there is no indication of her having any contact with Louisiana other than the broadcast of this story into the state. In the companion case to *Keeton*, *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Court examined a similar jurisdictional challenge. The case involved an allegedly libelous story concerning the California activities of a California resident. The article was drawn from California sources and the brunt of injury was suffered in California. The reporter and an editor who worked on the article claimed that they had no ability to control their employer's marketing activity and that the mere fact that they could foresee that the article would be circulated and have an effect in California was not sufficient for an assertion of jurisdiction. The Supreme Court dismissed these arguments because, their intentional, and allegedly tortious, actions were expressly aimed at California. *Id.* 104 S.Ct. at 1487. They knew that the article they penned would have a potentially devastating impact upon the plaintiff and also knew that the brunt of the injury would be felt by the plaintiff in her home state. Accordingly, they could have reasonably anticipated being haled into court there to answer for the truth of the statements made in their article. While there are certainly factual distinctions between the cases, such as the fact that the publication in *Calder* had its largest circu-

---

**1.** The result would be the same even if the court disregarded the cable broadcasts, as defendants argue it should. The ordinary signal generates sufficient contacts.

lation in California, the principles underlying the case are still applicable here. Every case on this subject can be distinguished and each must be judged on its own facts. Under the facts of this case, the Court finds that the exercise of jurisdiction over defendant Pollock is based on sufficient contacts and does not offend traditional notions of fair play and substantial justice.

### Defendant Lyons

 As to defendant Lyons, his connection with the story is one step attenuated from that of the reporter. He merely furnished information which was later used in the story and he had no part in its preparation or broadcast. It has not been shown that he was even aware that the station broadcast into Louisiana. The plaintiffs have not met their burden as to this defendant and he must now be dismissed.

Accordingly, the Motion to Dismiss is GRANTED IN PART by dismissing defendant Larry James Lyons and DENIED in all other respects.