887 So.2d 624 (2004)
LIFECARE HOSPITALS, INC., Plaintiff-Appellee
v.
B & W QUALITY GROWERS, INC., Defendant-Appellant.
No. 39,065-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 2004.
*626 Cook, Yancey, King & Galloway, by Bryce J. Denny Shreveport, for appellant.
Wiener, Weiss & Madison, by James R. Madison, Shreveport, for appellee.
Before WILLIAMS, PEATROSS and MOORE, JJ.
MOORE, J.
A local acute care hospital admitted an out-of-state minor patient for treatment after verifying her dependent insurance coverage through the employer's self-funded insurance plan administrator. Subsequently, the employer reduced the patient's maximum benefits retroactively, *627 thereby eliminating coverage for a large part of the treatment costs provided by the hospital. The hospital sued for tortious misrepresentation. From a summary judgment granted in favor of the hospital, the defendant appeals. For the reasons that follow, we affirm.

FACTS
This is an action for damages allegedly arising out of tortious misrepresentation. Lifecare Hospitals, Inc. ("Lifecare") is an acute care hospital located in Shreveport, Louisiana. The defendant, B & W Quality Growers, Inc., is a multi-state farming operation based in Fellsmore, Florida. The dispute in this case arose out of insurance coverage for 58 days of hospital care provided by Lifecare to an acutely ill, 17 year-old patient, Jennifer Franco ("Franco"). Franco was covered as an employee dependent under B & W's self-funded health insurance plan ("Plan").
Lifecare alleges that Franco's hospital bill for the medical services it rendered amounted to $142,908.47. Prior to admitting Franco on December 20, 2000, Lifecare verified that Franco had health insurance that would cover Lifecare's services. Lifecare alleged that it was advised by B & W's Plan administrator, Professional Administrators, Inc. ("PAI"), that Franco's health insurance provided a two million dollar lifetime maximum benefit, of which $380,000 had been used, leaving $1,620,000 benefits remaining. Lifecare alleged that it admitted Franco for treatment based on representations of coverage by B & W's agent, PAI, and it would not have admitted Franco had it known that insurance coverage would not be available because of B & W's decision to retroactively reduce benefits.
On January 17, 2001, Franco's mother informed Lifecare that B & W told her husband that its health care Plan had been modified to decrease the lifetime maximum benefit from $2,000,000 to $400,000, and the reduction applied retroactively to the date coverage began. At that time, Franco was seriously ill and could not be safely released until February 17, 2001. Because of the reduction in the maximum lifetime benefit, Franco's lifetime maximum benefit was already exhausted before Lifecare could be paid for all its services, leaving an unpaid balance of $81,762.92.
Lifecare filed the instant suit on June 29, 2001 against B & W for breach of its duty to provide complete and accurate information through its agent, PAI, regarding Franco's insurance coverage, including its plans to reduce the lifetime maximum benefit. It sought damages equal to the amount owed for the patient's treatment, plus legal interest on that amount from the date of judicial demand, and that defendant be cast for costs of the proceedings.
B & W did not file an answer to Lifecare's petition, but instead filed a petition for removal of the case to Federal District Court for the Western District of Louisiana, Shreveport Division, alleging that the case was governed by 29 USC § 1001 et seq., commonly known as ERISA, an acronym for the Employee Retirement Income Security Act. B & W contended that any remedy to which Lifecare is entitled is exclusively provided under ERISA.
Lifecare filed a motion to remand the case back to state district court. On December 10, 2001, U.S. Magistrate Roy Payne granted the motion to remand and ordered the case remanded back to the First Judicial District Court. B & W appealed to the district court for review of the magistrate's order. U.S. District Judge Tom Stagg reviewed the magistrate's order de novo and affirmed the order to remand the case back to state district court on March 15, 2002.
*628 Following remand to the First Judicial District Court, B & W filed the declinatory exception of lack of jurisdiction in personam. B & W alleged that it owns no property in Louisiana and does not engage in any of the activities under La. R.S. 13:3201 that would confer personal jurisdiction. Additionally, it alleged that the exercise of personal jurisdiction over B & W would offend traditional notions of fair play and substantial justice.
The court overruled the exception, expressly relying on the analysis in the case of Guidry v. United States Tobacco Co. Inc., 188 F.3d 619 (5th Cir.1999), a case which held that a tort committed outside the state that causes damage within the state can confer personal jurisdiction over the tortfeasor. Subsequently, the trial granted Lifecare's motion to compel compliance with its discovery requests in the form of interrogatories and production of documents, including any and all agreements between B & W and PAI.
On June 30, 2003, Lifecare filed a motion for summary judgment on its negligent misrepresentation claim. B & W opposed the motion, again asserting that the trial court lacked in personam jurisdiction and that the claim was preempted by ERISA. B & W insisted that the claim was really a claim for coverage under the Plan, and the claim was without evidentiary support, claiming that there was no proof that the claim would have been paid but for the change in coverage limits. It further argued that neither the Plan administrator, PAI, or the case management company, Beachtree, both of whom Lifecare had communicated with regarding the admission and care of Franco under the Plan, were authorized by B & W to misrepresent coverage under the Plan.
The trial court granted Lifecare's motion for summary judgment. B & W filed this appeal, alleging that the trial court erred in finding that the district court had personal jurisdiction over B & W, that it erred finding that this claim was not pre-empted by federal law, and that it erred in granting summary judgment on insufficient evidence.

Discussion

Personal Jurisdiction
B & W is a large-scale agricultural corporation domiciled in Florida with farms located in Florida, Tennessee, Alabama, West Virginia, Maryland and Pennsylvania. The company grows and markets herbs such as cilantro, mint and watercress. B & W does not conduct business in Louisiana and has never conducted agricultural business in this state and has no customers or employees in this state. The only contact with this state has been through its agent, PAI, the Plan administrator for its self-funded medical insurance plan, and that contact amounted to telephone calls verifying coverage. B & W argues that a telephone call to verify insurance coverage does not constitute minimum contacts sufficient to support the exercise of personal jurisdiction. Memorial Hospital System v. Blue Cross, 830 F.Supp. 968 (S.D.Tex.1993).
Jennifer Franco was a dependent of one of B & W's employees, Tony Franco. Mr. Franco lives in Tennessee and manages one of B & W's farms in New Market, Alabama. Jennifer, age 17, suffered a severe stroke and was brought to Louisiana by her mother for special acute care treatment at Lifecare Hospital. B & W argues that since it had no control over the parent's decision to bring Franco to Louisiana, it did not "purposely avail itself of the benefits" and protection of Louisiana.
Lifecare, on the other hand, alleges that the tortious conduct of B & W and its Plan administrators outside the state caused injury in Louisiana, and, therefore, Louisiana *629 can exercise specific personal jurisdiction over B & W. Guidry v. United States Tobacco Company, Inc. et al., supra. The tortious conduct of B & W consisted of a breach of its duty to give accurate and current information regarding the limits of medical coverage under the Plan. Lifecare contends that B & W knew that it was going to reduce the lifetime maximum benefits retroactively but failed to disclose that information to Lifecare through its Plan administrator. As a result of B & W's failure to give accurate information in this regard, Lifecare suffered a considerable economic loss.
Additionally, Lifecare contends that the several telephone conversations regarding coverage, the care plan agreement for Ms. Franco, and payment of part of her medical bill at Lifecare constituted minimum contacts sufficient to support the exercise of personal jurisdiction.
We begin our analysis with Louisiana's "long-arm" statute, La. R.S. 13:3201, which provides that a Louisiana court may assert personal jurisdiction over a non-resident defendant under the following circumstances:
Personal jurisdiction over nonresidents
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
(5) Having an interest in, using or possessing a real right on immovable property in this state.
(6) Non-support of a child, parent, or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state.
(7) Parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.
(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
Louisiana's long-arm statute extends personal jurisdiction to the limits of due process, which means that this court need only determine whether subjecting B & W to suit in Louisiana would offend the Due Process Clause of the Fourteenth Amendment. Thomas v. Kennedy, 75 *630 Fed. Appx. 281, 2003 WL 22134568 (5th Cir.(La.) Sep 16, 2003); Fox v. Board of Supervisors of Louisiana State, 576 So.2d 978 (La.1991). Personal jurisdiction may be asserted over a nonresident defendant only if that defendant has certain "minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There are two categories of minimum contacts with a state that may subject a defendant to jurisdiction in that forum. A state has specific jurisdiction over a defendant when the suit arises out of or is related to the defendant's contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). A state has general jurisdiction over a defendant when the defendant has continuous and systematic contacts with the forum state. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413 96 L.Ed. 485 (1952). In the context of general jurisdiction, "minimum contacts" means that the defendant has purposely availed himself of the privilege of conducting activities within the forum state and should reasonably anticipate being haled into court in the forum state. Langley v. Oxford Chemicals, Inc., 634 So.2d 950 (La.App. 2 Cir.1994) citing Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Personal jurisdiction may be exercised over a defendant even when the suit does not arise out of the defendant's contacts with the forum state. Helicopteros, 466 U.S. at 415 n. 9, 104 S.Ct. at 1872 n. 9.
When a defendant alleges that the court does not have personal jurisdiction, a plaintiff need only make a prima facie showing of jurisdiction. Asarco, Inc. v. Glenara, Ltd., 912 F.2d 784, 785 (5th Cir.1990). The allegations in the complaint are taken as true except as controverted by the defendant's affidavit. Id. All conflicts are resolved in favor of the plaintiffs. Id.
B & W argues that there is no jurisdiction because this is not a case of misrepresentation. It contends that it was under no duty to inform Lifecare that it was considering reducing the maximum benefit for its employees under its healthcare Plan on December 15, 2000 when PAI told Lifecare that Jennifer Franco had a $1,620,000 lifetime benefit remaining. B & W apparently withheld disclosure of that information until the decision to reduce the lifetime benefit was implemented retroactively to the date of coverage in early January. B & W insists, therefore, that there was never any misrepresentation to Lifecare regarding the amount of coverage. Accordingly, personal jurisdiction must be based on the telephone calls to PAI verifying coverage, and these are insufficient to meet the "minimum contacts" requirements under the law.
In Guidry v. U.S. Tobacco Co., Inc., supra, a Louisiana tobacco consumer brought a suit against several tobacco trade associations alleging that the associations, through their advertisements and published articles, created a false impression that the addictive and carcinogenic effects of tobacco products were much less than the associations knew them to be, and that the consumer suffered physical injuries as a result of relying on those false representations. Taking as true the alleged facts in the plaintiff's complaint and shown by the depositions and affidavits, the court concluded that the plaintiffs made a prima facie showing that each of the tobacco trade associations had engaged in acts and omissions that included intentional and negligent misrepresentations that caused the plaintiff to suffer injury, *631 and that this constituted sufficient minimum contacts with Louisiana to confer personal jurisdiction. Citing a long line of cases, the court stated that when a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state to exercise personal jurisdiction. Guidry, supra at 628. (Emphasis ours). An act committed outside the state that has consequences or effects in the state will suffice as a basis for jurisdiction in a suit arising from those effects if the consequences or effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct. Id.
The facts in Guidry are somewhat distinguishable from the instant case in that the consequences or effects of the misrepresentation resulted in physical harm to the plaintiff. In this case, Lifecare alleges that it suffered economic loss as a result of B & W's failure to inform Lifecare that it planned to reduce the lifetime maximum benefit. The question is whether merely an economic loss in the state caused by an out-of-state defendant is sufficient to warrant the exercise of personal jurisdiction over the defendant. Additionally, we note that B & W had no direct communication with Lifecare. The only communications Lifecare had regarding coverage was with PAI and the care plan. Finally, the situation is further complicated by this fact: At the time Lifecare communicated with PAI regarding the limits of coverage in mid-December of 2000, B & W was considering, but had not yet acted upon, the suggestion of PAI to reduce the lifetime benefit for members in the Plan.
We conclude initially that the consequences or effects in the form of an economic loss suffered by Lifecare are sufficient to support the assertion of personal jurisdiction. The scenario depicted in this case is one that is reenacted each day across the country when a patient in need of medical care requests admission to a hospital (or seeks treatment from a doctor). Because of the high cost of medical care, many providers like Lifecare have only limited budget allocations for indigent care and for losses from patient nonpayment. Naturally, the provider wants to know if payment can reasonably be expected. Thus, one of the first steps in accepting a patient for treatment is to determine a financial source for the cost of care to be provided.
If a provider believes that a patient may be covered under a health care plan, it is a customary practice to communicate with the plan agents to verify eligibility and coverage. If the provider confirms that a patient has health insurance that covers a substantial part of the expected costs of the health care, it will normally agree to admit the patient without further inquiry. An insurer should recognize the commercial implications to the provider of its assurances regarding coverage benefits. The consequences of misinformation or false representation as to coverage can be dramatic and far reaching.
The only question is whether the risk of non-payment should remain with the provider or be shifted to B & W, which through its agent misrepresented to the provider that the patient's lifetime benefit was sufficient to cover the treatment Lifecare was offering. This determination is best made through the duty/risk analysis, provided that the state recognizes an action for damages for misrepresentation.
Louisiana is a jurisdiction which allows recovery in tort for purely *632 economic loss caused by misrepresentation even where privity of contract is absent. Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007 (La.1993) (Citations omitted). Although negligent misrepresentation is a common law tort, Louisiana Civil Code articles 2315 and 2316 are sufficiently broad to encompass a cause of action for negligent misrepresentation. Devore v. Hobart Mfg. Co., 367 So.2d 836 (La.1979); Barrie, supra. Louisiana appellate courts have integrated the common law negligent misrepresentation tort doctrine into the duty/risk analysis in negligent misrepresentation cases. Barrie, supra. In cases where there is no privity of contract, our supreme court has found that the duty of care owed under La. C.C. arts. 2315 and 2316 is compatible with the duty stated in the Restatement (2d) of Torts, § 552. Barrie, supra at 1016. Direct communication of the information from the misinformer to the person acting in reliance on it is not necessary. Barrie, supra at 1014. However, in those cases where there has been no direct communication between the misinformer and the person acting in reliance on the erroneous information, liability is generally limited to a select group who the misinformer actually knows will receive inaccurate information and act in reliance on it, even if the person is not known or identified to the misinformer. Barrie, supra.
B & W knew that Jennifer Franco was undergoing medical treatment for a very serious medical condition and therefore must have known that medical care providers were relying on information supplied by its agent, PAI, regarding the limits of insurance coverage. We thus conclude that Lifecare was a member of the limited group for whose benefit accurate information regarding coverage must be supplied. We further conclude that B & W was under a duty to act in good faith and provide up-to-date information regarding its plan to reduce coverage through its agent to third parties such as Lifecare Hospital, who rely on that information in making their admission and patient treatment decisions. Lifecare's use of the coverage information was certainly foreseeable, and B & W was surely aware of the economic loss that would ensue as a result of their decision.
Accordingly, we find that B & W's omission constituted a misrepresentation resulting in economic loss in this state. We further conclude that the economic loss suffered by Lifecare and the potential economic loss to other third party health care providers similarly situated is of such gravity that the assertion of personal jurisdiction will not offend due process.

Pre-Emption by ERISA
B & W argues that Lifecare's claim is pre-empted by federal law, namely ERISA, even though that issue was decided against B & W in Federal District Court. B & W's argument is as follows: Lifecare's claim has nothing to do with negligent misrepresentation because on December 15, 2000, shortly before Jennifer Franco was admitted to Lifecare Hospital, PAI accurately told Lifecare that the maximum benefit under the Plan was $2,000,000. B & W argues that Lifecare's suit is actually a challenge as to whether B & W could legitimately amend the Plan reducing the maximum benefit to 400,000 retroactively, and this is a question governed by ERISA.
We have previously determined in this opinion that B & W was under a duty to provide accurate, up-to-date information to third parties who rely on it and that duty encompassed disclosure of its plans to retroactively reduce coverage. Therefore, B & W's omission in this respect constituted negligent misrepresentation.
*633 Negligent misrepresentation is a state-law tort claim. Memorial Hospital System v. Northbrook Life Insurance Co., 904 F.2d 236 (5th Cir.1990). ERISA does not preempt state law when the state-law claim is brought by an independent third party health care provider against an insurer for its negligent misrepresentation regarding the existence of health care coverage. Transitional Hospitals Corporation v. Blue Cross and Blue Shield of Texas, Inc., 164 F.3d 952 (5th Cir.1999).
Nor do we accept B & W's argument that the instant case is distinguishable because the dispute is not about coverage but whether B & W could lawfully retroactively reduce the maximum benefit. For example, in Memorial Hospital System, supra, although the patient was not insured under the Plan, the hospital was misinformed by the defendant's agent that she was covered under the Plan.
Lifecare's suit is a suit for damages arising out of negligent misrepresentation. It is not a suit to establish coverage under the Plan, nor to dispute B & W's right to reduce the maximum lifetime benefit under the Plan. Further it is not a suit disputing the decision to make the reduction of such benefits retroactive to the date of the inception of coverage. Accordingly, this state law tort claim is not preempted by ERISA.

Summary Judgment
At the hearing on the motion for summary judgment, B & W agreed that there were no facts in dispute. Louisiana law recognizes the tort of negligent misrepresentation. Daye v. General Motors Corp., 720 So.2d 654 (La.1998). The plaintiff must establish (1) the existence of a legal duty on the part of the defendant to supply the correct information; (2) a breach of that duty, and (3) causation. Lifecare contends that B & W, through its Plan administrator, had a duty to disclose correct and accurate information regarding its healthcare plan coverage when it verified that Ms. Franco was covered under the Plan. It breached this duty when it did not inform Lifecare that it was planning to reduce the maximum available lifetime benefit under the Plan which would result in the retroactive exhaustion of Ms. Franco's benefits. The failure to disclose this fact to Lifecare resulted in Ms. Franco's admission and subsequent treatment of Ms. Franco's illness by Lifecare. As a result, Lifecare suffered a loss of $81,762.92 in unpaid hospital bills for treatment of Ms. Franco. Accordingly, it contends it is entitled to judgment as a matter of law.
B & W contends that summary judgment is inappropriate because Lifecare did not prove that the losses incurred by Lifecare would have been covered under the Plan. This argument carries little weight in light of B & W's admission that there were no disputed facts in the case.
B & W also contends that it did not misrepresent anything to Lifecare. It had no dealings with Lifecare. Moreover, PAI's representations regarding coverage were accurate when they were made. It was only considering reducing the lifetime maximum benefit when Ms. Franco was admitted to Lifecare Hospital and it had no duty to disclose that fact.
Because we have previously discussed the duty/risk analysis for the tort of misrepresentation and the duty to third parties absent any privity of contract in our analysis of personal jurisdiction, we need not repeat the discussion here. We determined therein that B & W had a duty to provide accurate and up-to-date information, even indirectly to those third parties who it knew would rely on that information in making its decisions to admit and treat patients. The record in this case shows that the general manager of PAI *634 wrote the general manager of B & W suggesting a reduction of the maximum benefit to $500,000. On this same day, Lifecare contacted PAI for the first time to confirm coverage for Jennifer Franco and was told that she had $1,620,000 remaining on her $2,000,000 lifetime maximum benefit. This coverage amount was confirmed again on December 18, 2000. There were several more telephone conversations between Lifecare and PAI and its case manager regarding Jennifer's treatment care plan, including the treatment costs and their payment in the ensuing weeks. At no time did B & W's agent inform Lifecare that it planned to retroactively reduce benefits to $400,000 and thereby eliminate coverage for the treatment they were actively approving. B & W's subsequent retroactive reduction in the lifetime benefit in January rendered the information it gave Lifecare in December inaccurate. Lifecare relied on this inaccurate information and suffered economic loss as a result.
Hence, we conclude that B & W had a duty to disclose to Lifecare its plans to reduce the maximum lifetime benefit since it knew that Lifecare would be affected by the decision. B & W breached its duty to provide accurate and up-to-date information regarding coverage and that breach caused economic loss to Lifecare.
For these reasons, the summary judgment in favor of Lifecare is affirmed. B & W is cast in judgment for costs of this appeal.
AFFIRMED.