# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 13, 2008

Charles R. Fulbruge III

Clerk

No. 07-40829
Summary Calendar

OLGA DE LEON; DAURYS BLADIMIL DE LEON; RAFAELA DE LEON; FRANKLIN ROA; JOSE GUERRERO MARTE; CRISTIAN ENCARNACION

Plaintiffs-Appellants

v.

SHIH WEI NAVIGATION COMPANY LTD; DONG LIEN MARITIME SA PANAMA

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:05-CV-579

Before WIENER, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Five citizens of the Dominican Republic—William De Leon, Franklin De Leon, Franklin Roa, Jose Guerrero Marte, and Cristian Encarnacion (the "Stowaways")—surreptitiously boarded the M/V WELL PESCADORES in an ill-fated attempt to enter the United States illegally. Plaintiffs-Appellants Olga De

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Leon, Daurys Bladimil De Leon, Rafaela De Leon, Franklin Roa, Jose Guerrero Marte, and Cristian Encarnacion ("Plaintiffs-Appellants") are either surviving stowaways or heirs of the decedent stowaways. They initiated this admiralty and maritime tort action seeking damages for personal injuries allegedly suffered by the Stowaways. Shih Wei Navigation Company, Limited ("Shih Wei") and Dong Lien Maritime S.A., Panama ("Dong Lien") (collectively "Defendants-Appellees") are the only remaining defendants in this action. They are alleged to represent the owner's interest of the M/V WELL PESCADORES. Plaintiffs-Appellants appeal the district court's dismissal of their action for lack of personal jurisdiction over Defendants-Appellees. Convinced that the district court correctly determined that Defendants-Appellees lack the requisite minimum contacts with the United States to confer general personal jurisdiction on the courts of this country, we affirm.

In March 2003, the Stowaways covertly boarded the WELL PESCADORES—a Panama-flagged cargo ship whose master was from Taiwan and whose crew was from the People's Republic of China—while it was calling on Santo Domingo, Dominican Republic; their apparent intent being to stow away aboard the ship until it reached its destination, Houston, Texas. While the vessel was in international waters en route to Houston, the Stowaways were discovered by the vessel's crew and then either left voluntarily on a raft or were forcibly thrown overboard by the crew, depending on whose version of the story is true. Two of the Stowaways, William De Leon and Franklin De Leon, died.[1]

---

[1] Plaintiffs-Appellants allege that the two men were thrown overboard but never made it to the raft because they could not swim.

I

Plaintiffs-Appellants filed this suit against the vessel's owners and charterers.[2] They allege that Defendants-Appellees represent the vessel owner's interest, and as such were responsible for the actions of the vessel's crew under the charter party.[3] Shih Wei was indisputably the manager of the vessel for the voyage that gave rise to this action, and Dong Lien, a wholly-owned subsidiary of Shih Wei, acted as Shih Wei's agent and executed the charter party as owner with the charterer, BHBP.[4]

Both Defendants-Appellees are foreign corporations: Dong Lien was incorporated under the laws of Panama, and Shih Wei was incorporated under the laws of Taiwan. Each corporation has its principal place of business in Taipei, Taiwan. Defendants-Appellees filed a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss, asserting that the district court lacked personal jurisdiction over them. The district court granted the motion, concluding that it could not exercise either specific jurisdiction or general jurisdiction over Shih Wei or Dong Lien. Plaintiffs-Appellants timely filed a notice of appeal. On appeal, they insist that Defendants-Appellees had sufficient contacts with the United States to support the district court's exercise of general personal jurisdiction over them.

---

[2] As is common, the owners of the WELL PESCADORES had chartered the ship for the voyage to another entity, BHP Billiton Transport and Logistics Pty., Ltd. ("BHBP"), a corporation incorporated under the laws of Australia. BHBP had, in fact, sub-chartered the vessel to Pegasus Shipping, a corporation incorporated under the laws of Turkey.

[3] The charter party provided that the owners of the WELL PESCADORES remained responsible for the vessel's crew.

[4] Dong Lien claims that the owner of the WELL PESCADORES was Man Shipping, a limited partnership existing under the laws of the Isle of Man. Dong Lien, though, is defined as the "Owner" in the charter party, so any responsibilities assigned to the "owner" under that agreement were assigned to Dong Lien.

## II

We review de novo the question whether personal jurisdiction may be exercised over a defendant.[5]  When the basis for personal jurisdiction is challenged and the district court grants the defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need only make a "prima facie showing of the facts on which jurisdiction is predicated" on appeal.[6]

"Personal jurisdiction over a nonresident defendant attaches only when a defendant is amenable to service of process under the forum state's long-arm statute and the exercise of jurisdiction comports with the due process clause of the [F]ourteenth [A]mendment."[7]  Alternatively, when a claim arises under federal law, as is the case here, personal jurisdiction may be exercised only if doing so would be proper under the due process clause of the Fifth Amendment.[8]

"The due process inquiry likewise has two parts.  For personal jurisdiction to exist the nonresident defendant purposefully must have established 'minimum contacts' with the forum state such that he invoked the benefits and protections of the forum's laws and thus reasonably could anticipate being haled into court there.  In addition, circumstances must be such that the exercise of personal jurisdiction does not offend 'traditional notions of fair play and substantial justice.'"[9]  The "minimum contacts" inquiry may be further subdivided into contacts that give rise to either specific jurisdiction or general jurisdiction.  "When a cause of action arises out of a defendant's purposeful

---

[5] Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 335 (5th Cir. 1999).

[6] Nuovo Pignone, SpA v. STORMAN ASIA M/V, 310 F.3d 374, 378 (5th Cir. 2002).

[7] Asarco, Inc. v. Glenara, Ltd., 912 F.2d 784, 786 (5th Cir. 1990).

[8] See FED. R. CIV. P. 4(k)(2); World Tankers Carriers Corp. v. M/V Ya Mawlaya, 99 F.3d 717, 723 (5th Cir. 1996).

[9] Asarco, 912 F.2d at 786 (citations omitted).

contacts with the forum, minimum contacts are found to exist and the court may exercise its 'specific' jurisdiction. Even a single, substantial act directed toward the forum can support specific jurisdiction. Where a cause of action does not arise out of a foreign defendant's purposeful contacts with the forum, however, due process requires that the defendant have engaged in 'continuous and systematic contacts' in the forum to support the exercise of 'general' jurisdiction over that defendant . . . [C]ontacts of a more extensive quality and nature are required."[10]

Plaintiffs-Appellants do not contest the district court's conclusion that it could not exercise specific jurisdiction over Defendants-Appellees; instead, they assert that the 43 to 45 calls[11] made on U.S. ports by vessels owned or managed by Defendants-Appellees during the three years preceding the incident in question support that court's exercise of general jurisdiction under Federal Rule of Civil Procedure 4(k)(2).[12] Specifically, Plaintiffs-Appellants insist that if the district court had properly applied our precedent in Asarco, Inc. v. Glenara, Ltd.[13] in the Rule 4(k)(2) context by considering Defendants-Appellees' contacts with the United States as a whole, it would have recognized that Defendants-Appellees had "continuous and systematic" contacts with the forum, based on

---

[10] Id.

[11] Plaintiffs-Appellants allege that Defendants-Appellees called on U.S. ports 96 times in the three years preceding the incident at issue. The district court, however, recognizing that it could only consider the calls made prior to the filing of the action, see id. at 787 n.1 (noting that "the relevant time for determining jurisdiction is the filing of the complaint"), determined that vessels owned, operated, or managed by Shih Wei made between 43 to 45 calls on U.S. ports during the relevant time frame.

[12] See FED. R. CIV. P. 4(k)(2) ("For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.").

[13] 912 F.2d 784 (5th Cir. 1990).

their repeated calls on U.S. ports. Having reviewed the record on appeal, the parties' briefs, and the applicable case law, we are convinced that the district court properly considered and applied Asarco in light of Rule 4(k)(2). Moreover, we agree with the district court that the requisite "minimum contacts" to support the exercise of general personal jurisdiction are lacking.

In Asarco, ASARCO, Inc. ("ASARCO") sought to recover damages for cargo lost when the vessel carrying the cargo sank by filing suit in federal district court in Louisiana against the owner of the vessel, Glenara, Ltd., as well as the manager of the vessel, Anglo-Eastern Management Services Limited ("Anglo-Eastern").[14] ASARCO insisted that Anglo-Eastern had sufficient contacts with Louisiana to support the exercise of general personal jurisdiction based solely on 20 calls made by Anglo-Eastern-managed vessels to various ports in the State of Louisiana in the five years preceding the accident.[15] We concluded that such contacts were "better characterized as sporadic than continuous and systematic," and that they were "insufficient to cause Anglo-Eastern reasonably to anticipate the possibility of being haled into court in Louisiana."[16] Furthermore, we emphasized that Anglo-Eastern's vessels were under charter when they called on Louisiana ports, and that the respective charterers controlled the vessels' destinations and dictated the ports on which the vessels called. Accordingly, we concluded that Anglo-Eastern could not "be held to have availed itself of the benefits and protections of doing business in Louisiana by virtue of its sporadic operational management of vessels sent to Louisiana by others."[17]

---

[14] Id. at 785.

[15] Id. at 787. We observed in Asarco that "Anglo-Eastern was not licensed to do business in Louisiana; did not solicit business there; did not maintain an office there; and did not own property or employ personnel in the state." Id.

[16] Id.

[17] Id.

Similar to Anglo-Eastern, Defendants-Appellees' sole contacts with the forum were calls made on forum ports in the years preceding the incident at issue.[18] Defendants-Appellees are not licensed or authorized to do business in the United States; they have never advertised or solicited any business in the United States; they do not maintain a place of business or office in the United States; they have no employees or agents located in the United States; they have never maintained a telephone number or mailing address in the United States; and they have never owned, leased, or possessed any interest in property in the United States.

At the time of the voyage at issue, Dong Lien owned three vessels and Shih Wei managed 22 vessels, which in combination made between 43 to 45 calls to various ports around the United States during the three years at issue.[19] Thus, on average, each vessel called on a U.S. port about 0.68 times per year, or roughly twice every three years. Neither is there any discernable pattern with respect to the timing and location of these calls: Defendants-Appellees' vessels did not call on the same U.S. ports with any regularity or consistency. In addition, almost every time one of the vessels did call on a U.S. port, it was under charter; and, pursuant to these charter parties, each vessel was under the commercial direction and control of its charterer. Accordingly, the charterers directed the vessels' movements, and Defendants-Appellees had no control over the vessels' destinations or the ports on which they called.[20]

---

[18] We recognize, and indeed the district court did as well, that the relevant forum for analyzing Defendants-Appellees' contacts is the United States, whereas, in Asarco, the relevant forum was the State of Louisiana.

[19] Shih Wei-owned vessels called on U.S. ports nine times in 2003, fourteen times in 2004, and twenty to twenty-two times in 2005 prior to the filing of this action.

[20] See, e.g., Griner Co. v. M/V Conti Blue, 1996 U.S. Dist. LEXIS 21561 *4-5 (S.D. Tex. 1996) (holding that "[u]nder Fifth Circuit law, it is clear that the owner of a vessel is not subject to personal jurisdiction merely because his vessel was used to transport goods into the forum state"); Saudi v. S/T Marine Atlantic, 159 F. Supp. 2d 469, 482 n.8 (S.D. Tex. 2000)

We reject Plaintiffs-Appellants' assertion that the crew's discovery of the Stowaways returned operational control of the WELL PESCADORES and its destination to Defendants-Appellees in accordance with Clause 40(b)(I) of the charter party. Plaintiffs-Appellants' contention is based on an incorrect interpretation of the term "off-hire." Accordingly, we conclude that the charterer or sub-charterer retained operational control of the WELL PESCADORES at all relevant times.

### III

When we consider the isolated and sporadic nature of the calls made on U.S. ports by Defendants-Appellees' vessels, the lack of control Defendants-Appellees' possessed over these calls, and the absence of any other contacts with the United States in the framework of Asarco, we conclude that Defendants-Appellees lack the requisite "continuous and systematic" contacts with the forum to support the exercise of general personal jurisdiction. The district court's dismissal of this action for lack of personal jurisdiction is
AFFIRMED.

---

(noting that "where the non-resident defendant does not direct and control the destination of the vessel, there is no personal jurisdiction over that defendant because that defendant cannot purposely avail itself of the benefits and protections of the forum port"); Sibrian v. Chapel Navigation, 1997 U.S. Dist. LEXIS 19616 *4 (E.D. La. 1997) (holding that "because the [vessel] owner did not choose the ports, the owner cannot be held to have availed itself of the benefits and protections of doing business in Louisiana by virtue of the contacts") (internal quotations omitted); Mutualidad Seguros del Instituto Nacional de Industria v. M/V Luber, 1998 U.S. Dist. LEXIS 23165 *5-7 (S.D.N.Y. 1998) ("explaining that "[w]here the vessel's owner has ceded authority to the charterer, the choices of the latter cannot be imputed to the former"); Nicolaisen v. Toei Shipping Co., 722 F. Supp. 1162, 1165 (D. N.J. 1989) (noting that the vessel owner's lack of control over where the vessel would make port "militates against finding that [the vessel owner] was reasonably put on notice that it might be called upon to defend actions in [the forum]"). Compare these cases with Walter v. Sealift, Inc., 35 F. Supp. 2d 532, 534-35 (identifying that defendants remained in operational control of their vessels and generally knew the precise itinerary of the voyages undertaken was an important factor in satisfying the requisite "minimum contacts").